UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MALIK JONES, | NO. CV-09-0150-JLQ |
| Plaintiff, | |
| vs. | **ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' (PARTIAL) MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| J.L. BISHOP, et al., | |
| Defendants. | |

**BEFORE THE COURT** is the Moving[1] Defendants' Fed R. Civ. P. 12 Motion to Dismiss (Ct. Rec. 32), brought pursuant to unenumerated Rule 12(b), alleging Plaintiff's failure to properly exhaust administrative remedies as required by 42 U.S.C. § 1997(e) as to certain claims. The Plaintiff, Malik Jones, filed a timely response in opposition (Ct. Rec. 42), to which Defendants submitted a reply (Ct. Rec. 43). For the reasons discussed below, the Defendants' Motion is granted in part and denied in part. Also before the court is Plaintiff's Motion for Default Judgment (Ct. Rec. 35), which the court denies.

**I. BACKGROUND**

On November 6, 2009, Plaintiff, a California state prisoner proceeding *pro se*, filed an amended civil rights action (Ct. Rec. 15) seeking relief under 42 U.S.C. § 1983 for alleged

---

[1] Moving Defendants include all sixteen Defendants who have appeared including the initially moving Defendants: Betti, Bishop, Lipton, Mitchell, Probst, Rigney, Swart, Stovall, Weston, Whitlow, and Williams; and the Defendants who later filed requests to join in the motion: Felker, Robertson, Wright (Ct. Rec. 55) and Thompson (Ct. Rec. 57) and Stailey (61).

ORDER - 1

excessive use of force, denial of medical care, and retaliation, as well as state tort claims for negligence and assault/battery. These numerous claims against the Defendants spawned from alleged incidents at the High Desert State Prison ("HDSP") from approximately November 17, 2007 to April 27, 2008. Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915, Plaintiff's constitutional and state law claims in the original complaint (Ct. Rec. 1, filed December 29, 2008) were previously screened by the court on July 13, 2009 (Ct. Rec. 10), finding the following cognizable claims against various Defendants: Eighth Amendment claims for excessive force/bystander liability, deliberate indifference to medical needs, and state law assault/battery and negligence claims. Plaintiff received leave to amend his claims for failure to protect, retaliation, and denial of equal protection. Ct. Rec. 10 at 3. The First Amended Complaint (Ct. Rec. 15) reasserted the cognizable claims found in the original complaint and added new or amended claims, which were screened by the court on March 16, 2010. Ct. Rec. 18. That screening eliminated the Plaintiff's claims of retaliation, apart from a new claim of destruction of documents against Defendant McGuire. *Id*. at 5. New claims of negligent supervision and wrongful refusal of medical care against Defendants Robertson and Thompson, and Robertson, Lipton, David, and Mitchell, respectively, were also found cognizable by the court. *Id.*

The court directed service of the following claims against twenty-three total Defendants:

1. Eighth Amendment claims of excessive force/bystander liability against seventeen Defendants: Betti, Bishop, Chatham, Kimbrell, Lipton, Mitchell, Montgomery, Probst, Rigney, Stailey, Stovall, Swart, Weston, Whitlow, Williams, Wisely, and Wright. Ct. Rec. 18 at 3.

2. Eighth Amendment claim of deliberate indifference to medical needs against four Defendants: David, Lipton, Mitchell, and Robertson. Ct. Rec. 18 at 3, 6.

ORDER - 2

3.  Eighth Amendment claim of failure to protect against Defendants Felker and the Director of Corrections (Ct. Rec. 18 at 3-4); as well as against Defendants Robertson, Thompson, and Wright. (Ct. Rec. 10 at 8-9, Ct. Rec. 18 at 6).

4.  Retaliation claim against Defendant McGuire. Ct. Rec. 18 at 6.

6.  State tort claims of negligence, assault, and battery claims against Defendants David, Lipton, and Mitchell. Ct. Rec. 18 at 3.

On July 29, 2010 the moving Defendants filed the current Motion to Dismiss (Ct. Rec. 32), arguing that Plaintiff failed to exhaust his available administrative remedies as to the "personal safety" claims of excessive force/bystander liability/failure to protect and medical indifference. The motion also requests the court to refuse to exercise supplemental jurisdiction over the pendent state law claims or dismiss them for failure to comply with the California Government Claims Act. Ct. Rec. 32 at 2. The relevant exhaustion facts are discussed within the Analysis in section (III) below.

## II.  LEGAL STANDARDS

### A.  Law on Exhaustion

The Prison Litigation Reform Act ("PLRA") provides that

> "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

24 U.S.C. § 1997e(a). The Supreme Court has identified two functions of the exhaustion requirement under the PLRA. First, the requirement minimizes judicial interference with prison management while giving the prison an opportunity to correct the situation before litigation commences. *Woodford v. Ngo*, 548 U.S. 81 (2006) (citing *Porter v. Nussle*, 534 U.S. 516, 525 (2002)). In *Griffin v. Arpaio*, 557 F.3d 1117 (9th Cir. 2009), the court

ORDER - 3

observed, "the primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." *Id.* at 1120 (citations omitted). Second, exhaustion aids in "reduc[ing] the quantity and improv[ing] the quality of prisoner suits." *Id*. (internal citation and quotation omitted). In furtherance of such goals, the Supreme Court interpreted the PLRA to require "proper exhaustion" of available administrative remedies. *Ngo*, 548 U.S. at 90.

Exhaustion is required for all lawsuits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process. *Booth v. Churner*, 532 U.S. 731, 741 (2001). In order to properly exhaust administrative remedies, an inmate must complete the administrative review process defined, not by the PLRA, but by the prison grievance process itself and comply "with an agency's deadlines and other critical procedural rules[.]" *Ngo*, 548 U.S. at 90-91.

To exhaust a grievance against prison staff, California prisoners must follow the appeals process provided for by the California Code of Regulations, title 15, §§ 3084.1 et seq. See Cal.Code Regs. tit. 15, § 3084.1(a) (providing that inmates may appeal "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare."). To initiate the process, an inmate must fill out a form, Dept. of Corrections, Inmate/Parolee Appeal Form, CDC 602 ("Form 602"), that is made "readily available to all inmates." Cal.Code Regs. tit. 15, § 3084.1(c) (2004). The inmate must fill out two parts of the form: part A, which is labeled "Describe Problem," and part B, which is labeled "Action Requested." Then, within 15 days of the event complained of, the prisoner "must first informally seek relief through discussion with the appropriate staff member." The staff member fills in part C of Form 602 under the heading "Staff Response" and then returns the form to the inmate.

If the prisoner is dissatisfied with the result of the informal review, or if informal review is waived by the State, the inmate may pursue a three-step review process. See

ORDER - 4

Cal.Code Regs. tit. 15, §§ 3084.5(b)-(d). California labels this three-step appeal process "formal" review. At the first level, the prisoner must fill in part D of Form 602, which states: "If you are dissatisfied, explain below." The inmate then must submit the form, together with a few other documents, to the Appeals Coordinator within 15 working days (three weeks) of the action taken. Id., § 3084.6(c). This level may be bypassed by the Appeals Coordinator in certain circumstances. Id., § 3084.5(b). Within 15 work-days after an inmate submits an appeal, the reviewer must inform the inmate of the outcome by completing part E of Form 602 and returning the form to the inmate.

If the prisoner receives an adverse determination at this first level, or if this level is bypassed, the inmate may proceed to the second level of review conducted by the warden. *Id.*, §§ 3084.5(c), (e)(1). The inmate does this by filling in part F of Form 602 and submitting the form within fifteen work-days of the prior decision. Within ten working days thereafter, the reviewer provides a decision on a letter that is attached to the form. If the prisoner's claim is again denied or the prisoner otherwise is dissatisfied with the result, the prisoner must explain the basis for his or her dissatisfaction on part H of the form and mail the form to the Director of the California Department of Corrections and Rehabilitation within 15 working days. *Id.*, § 3084.5(e)(2). An inmate's appeal may be rejected where "[t]ime limits for submitting the appeal are exceeded and the appellant had the opportunity to file within the prescribed time constraints." *Id.*, § 3084.3(c)(6). *Woodford v. Ngo*, 548 U.S. 81, 85-86 (2006). Generally, completion of the third level, the Director's Level of Review, exhausts the remedy. Cal.Code Regs. tit. 15, § 3084.1(a).

**B. Standard for Unenumerated Rule 12 Motion**

The failure to exhaust administrative remedies under the PLRA is treated as a matter in abatement and is properly raised in an unenumerated Rule 12(b) motion. *See Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.), *cert. denied*, 124 S.Ct. 50 (2003). Exhaustion is an affirmative defense; establishing exhaustion of administrative remedies under the PLRA

ORDER - 5

is not a pleading requirement or a jurisdictional prerequisite. *Wyatt*, 315 F.3d at 1119. Therefore, Defendants bear the burden of proving that the Plaintiff had available administrative remedies that he did not utilize. *Id*. "In deciding a motion to dismiss for a failure to exhaust non-judicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." *Wyatt*, 315 F.3d at 1119-20. "I[f] the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust-a procedure closely analogous to summary judgment-then the court must assure that [the prisoner] has fair notice of his opportunity to develop a record." *Id.* at 1120, n. 14. Should the court find that the prisoner has not exhausted non-judicial remedies through the California appeal process, the claim should be dismissed without prejudice. *Id.* at 1119-20.

## III. ANALYSIS

Defendants contend that Plaintiff failed to exhaust his administrative remedies as required by the PLRA. Defendants motion only pertains to Plaintiff's "personal safety" and medical indifference claims. Plaintiff's "personal safety" claims (i.e. excessive force/bystander liability/failure to protect), as well as his medical indifference claims, stem from four alleged incidents on the following dates:

1. November 30, 2007 (strip search, clothes cut off Plaintiff, resulting in lacerations, sexual assault with a flashlight, forced into sub-zero temperatures);

2. December 8, 2007 (cell extraction, point blank pepper spray, difficulty breathing and blurry vision);

3. April 22, 2008 (medical attendant activates alarm, severe injuries inflicted by arriving officers); and

4. April 27, 2008 (food tray dispute, kicked, injuries from falling out of wheelchair). Ct. Rec. 10 at 6-7.

**A. November 30, 2007 and December 8, 2007 Alleged Incidents**

ORDER - 6

The court previously recognized a cognizable claims for excessive force based on the November 30, 2007 strip search and the December 8, 2007 cell extraction. Closely intertwined with the excessive force claims, this court found the Plaintiff had also stated cognizable claims against Defendants Thompson, Robertson and Wright for failure to protect Plaintiff from the cell extraction on December 8, 2007. Also, the court recognized medical indifference claims based on alleged failure to treat Plaintiff's lacerations, resulting from having his clothes cut off his body on November 30, 2007, and Plaintiff's claims that nurses ignored his condition following his cell extraction on December 7, 2007. Ct. Rec. 10 at 8.

As evidence that Plaintiff did not exhaust these claims, Defendants have filed an Affidavit of the HDSP Appeals Coordinator, P. Statti, which states that Plaintiff did not submit any appeals based on claims of personal safety or medical indifference on these dates. In support of this declaration, Defendants have filed the CDCR "Inmate Appeal Tracking Report" for Level I and Level II appeals by Plaintiff between September 2007 and October 2008. Ct. Rec. 32. Though a total of twenty-four appeals by the Plaintiff were given log numbers and disposed of during this time frame, none of these Level I and II appeals address the claims described in the First Amended Complaint. The first record appeal processed after these incidents is Appeal Log 4168, received December 24, 2007, dealt with Plaintiff's desire to transfer to a warmer climate as the cold weather affected his mental and physical health. Ct. Rec. 32, Ex. 3 at 15. It appears the only on-record appeal concerning either the November 30 or the December 8, 2007 incidents is Appeal Log 693, **received March 13, 2008**. That document appealed Plaintiff's rules violation report ("RVR") which he received for resisting during the cell extraction. Plaintiff's appeal raised due process complaints with the way the institution investigated (or failed to investigate) the incident leading to the violation charge for obstructing a peace officer. Ct. Rec. 32, Ex. 2 at 19. Although Log 693 was processed through all three administrative levels of review, it did not make claims of excessive force/personal security issues or medical care indifference related to the claims in the

ORDER - 7

Amended Complaint. The court has considered the fact that in this appeal Plaintiff requested that his charge be dismissed because he was "illegally cell extracted" after having admittedly refused "to move to C-Yard which was out of fear for his life, safety and security as due to prison officials on C-Yard which was to this [sic] constantly retaliating against Mr. Jones and setting him up to be killed or seriously injured constantly using these tactics. . . ." *Id.* His safety concerns expressed in the appeal relate to his prior treatment in C-Yard, not the *alleged* excessive force utilized during the cell extraction on December 8, 2007. The court finds Appeal Log 693 was not only an untimely attempt to exhaust the personal safety issues surrounding the December 8, 2007 incident, but is also substantively insufficient to put the prison on notice of the personal safety claims from the incident raised in the First Amended Complaint.

Plaintiff opposes the lack of exhaustion motion by admitting that he did not appeal his specific claims based on the November 30, 2007 and December 8, 2007 incidents to the Director's level of review. However, it is his contention that he "filed a timely 602 complaint...detailing incidents of 11-3-07 and 12-8-07," but that he never received a response. Ct. Rec. 43 at 1 ¶ 2. Plaintiff's brief further explains,

> "... and due to mail was being stop and tamper with by H.D.S.P. official Pltf had this 602 sent to A. Redding CCII of (H.S. & Th.DAI) legal mail and requested that they make sure it get correctly filed an proceed, which A. Redding in response sent 602 to 3rd level/Director's level to make sure it got correctly processed and given a log #. Yet 3rd level sent 602 back to pltf and told him it must be completed through 2nd level, so Pltf sent 602 to H.D.S.P. Appeals coordinators office and never got a response log # nor 602 Back. A. Redding can be contacted along with 119 legal forms to this fact."

*Id*. Thus, Plaintiff's argument is that he substantially complied with the exhaustion requirement because he "filed a complaint" but received no response, he contends, because the grievance system is "corrupt". Ct. Rec. 43 at 1. According to Plaintiff's contentions, he was prevented from proceeding through all formal appeal levels.

ORDER - 8

The PLRA requires that an inmate exhaust only those administrative remedies "as are available." 42 U.S.C. § 1997e(a). As the Ninth Circuit has recently and repeatedly reiterated, the PLRA does not require exhaustion when circumstances render administrative remedies "effectively unavailable." *Sapp v. Kimbrell,* 2010 WL 3733581 (9th Cir., Sept. 27, 2010). If employees of a facility prevent or interfere with the filing of a grievance or the inmate's ability to exhaust administrative remedies, the exhaustion requirement may be "unavailable" and defendants estopped from raising non-exhaustion as an affirmative defense. *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). Courts have repeatedly held that an administrative remedy becomes "unavailable" for purposes of the exhaustion requirement if prison officials do not respond to a properly filed grievance or if they otherwise use affirmative misconduct to thwart a prisoner's attempts to exhaust. *See e.g.*, *Brown v. Valoff*, 422 F.3d 926 n. 18 (9th Cir. 2005); *Nunez v. Duncan,* 591 F.3d 1217, 1226 (9th Cir.2010); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir.2002) ("we refuse to interpret the PLRA 'so narrowly as to permit prison officials to exploit the exhaustion requirement through indefinite delay in responding to grievances.' "); *Abney v. McGinnis*, 380 F.3d 663, 667 (2nd Cir. 2004); *Ziemba v. Wezner*, 366 F.3d 161, 163-64 (2nd Cir. 2004); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir.2001)(finding allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that the prisoner had exhausted his "available" administrative remedies); *Mitchell v. Horn*, 318 F.3d 523, 529 (3rd Cir. 2003) (holding that prisoner lacked available administrative remedy for exhaustion purposes where the prisoner was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms). However, as these cases reflect, the prisoner must make some affirmative effort to comply with the administrative procedure. The procedure becomes "unavailable" if prison officials have somehow thwarted the inmates' attempts at exhaustion.

ORDER - 9

There is no evidence in the record to support Plaintiff's bald assertion that he ever timely filed or attempted to timely file a grievance/appeal with the institution concerning his excessive force and deliberate indifference claims arising out of the November 30, 2007 and December, 2007 incidents. Although the court must construe the Plaintiff's materials liberally, it is not permissible for the court to sustain a general allegation like Plaintiff's, without any measure of evidentiary support in the record.

The court has reviewed Plaintiff's evidence, including the copy of the CDC Form 1824 (Americans with Disability Act "Reasonable Modification or Accommodation Request"), which has a date stamp indicating it was received by the HDSP Appeals on December 13, 2007. On this form Plaintiff complained that he was suffering from the effects of being "pepper sprayed point blank in the face and mouth" on December 8, 2007. He complained of "problems breathing," and "my vision has been really blurry" and requested medical attention to help with his breathing and his vision. Ct. Rec. 43 at 4. In his opposing brief, however, Plaintiff admits that this particular complaint was "screen[ed] out and sent back" and then he found other means to obtain the medication he needed. Ct. Rec. 43 at 1, ¶ 3. The CDC form 1824 he utilized contains the following instructions:

> "If you do not agree with the decision on this form, you may pursue further review. The decision rendered on this form constitutes a decision at the FIRST LEVEL of review. To proceed to the SECOND LEVEL, attach this form to an Inmate/Parolee Appeal Form (CDC 602). . . . Submit the appeal with attachment to the Appeals Coordinator's Office within 15 days of your receipt of the decision rendered on this request form."

Ct. Rec. 43 at 4. Even if the court were to accept that Plaintiff's request for medical care was sufficient to put the institution on notice of his medical indifference and his excessive force claims, Plaintiff concedes he elected not to proceed with an appeal of the issues contained in his December 13, 2007 medical request. Ct. Rec. 32, Ex. 3 at 15. Accordingly, not only did Plaintiff not exhaust these claims, there is no evidence the administrative process was unavailable to him.

ORDER - 10

The purpose of the exhaustion requirement is to allow the prison to take appropriate responsive action, filter out frivolous cases, and create an administrative record which can be reviewed by the court. Though he admittedly did not follow them, there is no evidence Plaintiff was unaware of the proper administrative review procedures to address his concerns. Plaintiff's conclusory allegations to the contrary are insufficient to excuse his admitted failure to exhaust.

### B. April 22, 2008 and April 27, 2008 Alleged Incidents

Defendants also seek dismissal of Plaintiff's excessive force/bystander liability claims resulting from alleged incidents occurring on April 22, 2008 and April 27, 2008. Defendants assert that the institutional record evidences that Plaintiff did not submit any claims or grievances within the 15-day time-frame, between April 22, 2008 and May 16, 2008. Though Defendants have not explained this in their materials, the court notes that the CDC regulations permit the institution to bypass or waive the "informal level" of the grievance process and proceed with an appeal when the complaint concerns the alleged misconduct of an officer. Ct. Rec. 32 at 14. Plaintiff's appeal record confirms the informal level was in fact frequently bypassed.

The appeals closest in time to these two 2008 incidents in the institutional record are: Log 1022, received on April 17, 2008, which concerned Plaintiff's request for rollers for his walker; Log 1629, received June 11, 2008, which regarded Plaintiff's desire for an appropriate meat substitute for his meals other than beans; and Log 1675, received June 16, 2008, which concerned Plaintiff's difficulties resulting from a February 2007 surgery. Ct. Rec. 32, Ex. 5.

Plaintiff makes the same argument in regards to these 2008 claims as he did in regards to the claims arising in 2007. Plaintiff avers that he timely filed 602 appeal forms on April 30, 2008 regarding the incidents of April 22 and April 27, 2008, but that the officer that "picked up the mail that night was one of the officers that's

infamous for destroying and tampering with prisoners [sic] mail." Ct. Rec. 43 at 2. In this instance, along with his opposing brief, Plaintiff has submitted to the court copies of the two relevant 602 appeal forms both dated April 30, 2008. Ct. Rec. 43. One appeal form concerns Plaintiff's complaints surrounding the incident involving the activation of the alarm occurring on or around April 22, 2008. The second form concerns the incident with the meal tray occurring on or around April 27, 2008. At the bottom of these forms, Plaintiff writes that copies were sent to "(HDSP) Appeals Coordinator" and "Chief I/M Appeals, N. Grannis." According to the rules, all first level-appeals are to be forwarded to the "appeals coordinator." Ct. Rec. 32 at 13 (§3084.2(c)).

Plaintiff "followed up" on these appeals on May 8, 2010 by sending a letter to N. Grannis, at the third-level Inmate Appeals Branch of the CDCR, along with copies of these 602 forms. Plaintiff has also submitted to the court copies of these letters which indicate he was trying to ensure that his appeals were processed. Date stamps on these documents indicate they were received by the Inmate Appeals Branch on May 14, 2008. Plaintiff's letter to N. Grannis reads:

> This appeal is being sent to you, to make sure it gets processed and given log #. On 4-30-08 date this appeal was submitted officer starcevich worked 3rd watch, watch mail is picked up in this building as he worked c-1-building 3rd watch which involes[sic] picking up mail, and his been one of prison official that constanly[sic] subjects me to harassment and retaliation. He may have destroyed 602 also through prior letters I have sent you due to my 602s not being processed, destroyed, stagnated or not given log # by (HDSP) officials. I ask that you make sure its log and given log # and processed.

Ct. Rec. 43 at 12.

Plaintiff has also submitted the letters received in response from the Inmate Appeals Branch. Ct. Rec. 43 at 6, 11. By letters dated June 18, 2008, Mr. Grannis rejected Plaintiff's requests that Mr. Grannis ensure Plaintiff's appeals were given log numbers and processed, and advised Plaintiff that he would need to first complete

ORDER - 12

appeals through the second-level of review. *Id*. It is evident from the record and the numerous appeals Plaintiff filed during this time frame that he was not a novitiate to the prison grievance system and its steps.

Defendants do not respond with relevant evidence to Plaintiff's contention that his efforts to file these appeals were blocked. In conjunction with their motion, Defendants have filed the institutional record pertaining to Plaintiff's appeals during the relevant period of time. Notably, the institutional record submitted does not contain copies of Plaintiff's 602 forms dated April 30, 2008. However, if HDSP staff were interfering with the inmate's ability to properly file the appeals, one would not expect an official record of their filing.

The court also notes that the Inmate Tracking System Report evidences the data entry of 20 other appeals, copies of which were not provided to the court. Presumably these 20 appeals were not processed like the other 24 appeals listed on the Report because for these 20 appeals the Report 1) does not reflect a date received; 2) does not indicate a log number was ever assigned; and 3) does not indicate a disposition. Though the court can surmise these entries might reflect appeals which were screened out, Defendants have not provided any explanation regarding these undated, unknown appeals.

Defendants have essentially failed to respond to Plaintiff's contentions regarding the availability of the administrative remedy and his assertions that prison staff thwarted his efforts to file his appeals. Specifically, Defendants failed to offer any evidence relevant to this question such as 1) the accuracy and reliability of the prison's record-keeping practices; 2) the prison's methods for inmates to utilize in order to forward their appeals to the "appeals coordinator"; 3) the training of prison staff to accept and process inmate appeals; and 4) the prison's methods for responding to grievances. The court also notes that there is no evidence as to what an inmate

ORDER - 13

1 must do if staff does not respond to his appeal or if the inmate is being denied access
2 to the grievance process. *See e.g., Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir.
3 2005)(where inmate had filed several grievances and received no response, jail was
4 not entitled to judgment for failure to exhaust where "the (grievance) policy does not
5 instruct a prisoner on what he is to do when the [jail] fails to respond to his grievance
6 and there is no decision to appeal.").

7       Defendants' submissions, along with Plaintiff's response, at this juncture raise
8 questions about whether an administrative remedy was "available" at HDSP for
9 Plaintiff as to his claims of excessive force/bystander liability regarding the alleged
10 April 22 and April 27, 2008 incidents.  Although there is no evidentiary support for
11 Plaintiff's contention that he timely filed CDC Form 602s in regards to his 2007
12 complaints, as to the 2008 grievances, Plaintiff has submitted evidence raising
13 serious questions whether Plaintiff's efforts to exhaust were somehow thwarted by
14 the institution, procedures, or employees. Though Plaintiff admittedly did not
15 complete the administrative review process, Plaintiff's submissions support an
16 inference that Plaintiff's efforts to file appeals were frustrated by prison staff
17 intercepting his appeals. While the absence of an entry in the appeal log may indicate
18 Plaintiff never submitted the appeals, it may also indicate that the appeals were
19 discarded or ignored by staff, as Plaintiff contends.  The court simply can not make
20 this assessment given the present posture of the case and the inadequate factual
21 record.  Because the record does not conclusively establish that administrative
22 remedies were available to the Plaintiff, Defendants' motion is **DENIED** as to the
23 claims arising out of the April 22 and April 28, 2008 incidents.

24     **D. State Tort Claims**

25       Finally, Defendants move for the dismissal of Plaintiff's pendent state law
26 claims (negligence, assault, and battery) on the basis that Plaintiff has failed to file a

ORDER - 14

timely claim in compliance with the California Government Claims Act, Cal. Gov't Code §§ 900-998.3. That Act provides the requisites for filing of a tort claim against state employees and requires as a prerequisite to suit that Plaintiff file a claim with the California Victim Compensation and Government Claims Board. *Id*. § 911.2. Defendants have submitted evidence that there is no record of Plaintiff ever having filed such claims for events occurring on November 30, 2007, December 8, 2007, April 22, 2008 or April 27, 2008. Ct. Rec. 32, Ex. C. Plaintiff does not allege compliance with the state law in the First Amended Complaint, nor has Plaintiff responded to the argument made by Defendants' in their motion. Accordingly, Plaintiff has failed to timely exhaust his state claims as required by the California Government Claims Act; and therefore, the state law tort claims are **DISMISSED** without prejudice.

**E. Issues Concerning the Non-moving Defendants**

There are six non-moving Defendants, who have not appeared in the action: Chatham, Wisely, Montgomery, Kimbrell, McGuire, and the Director of Corrections.

**1.** *Chatham, Wisely, and Montgomery*

Three of the six non-moving Defendants (Chatham (suggested to be deceased), Wisely, and Montgomery) were also named in the excessive force/bystander claims which the court has ruled shall be dismissed for failure to exhaust. The court's ruling herein is equally effective in barring Plaintiff's claims against Defendants Chatham, Wisely, and Montgomery. Accordingly, Plaintiff's excessive force/bystander liability claims against Defendants Chatham, Wisely, and Montgomery, arising out of November 30, 2007 and December 8, 2007 claims will also be dismissed. *Silverton v. Department of Treasury of U. S. of America*, 644 F.2d 1341 (9th Cir. 1981)(court may take sua sponte action against non-moving defendants "where such defendants

are in a position similar to that of moving defendants or where claims against such defendants are integrally related.").

### 2. *Kimbrell*

The court has denied the dismissal of Plaintiff's excessive force/bystander liability claims arising from the alleged incidents on April 22, 2008 and April 27, 2008. Defendant Kimbrell is a named Defendant in the claim pertaining to April 27, 2008. On August 18, 2010, the U.S. Marshals Service returned an unexecuted summons with the suggestion that Kimbrell was deceased. Ct. Rec. 37. Counsel for Defendants indicates in the Motion to Dismiss that "[t]o Defendants' knowledge, Defendant[]..Kimbrell []is] deceased." Ct. Rec. 32 at 1 n 1. Plaintiff has indicated in his response brief that he would voluntarily dismiss his claims against Defendant Kimbrell and "not sue [the] estate[]," if the family would provide Plaintiff with proof of Kimbrell's death. Ct. Rec. 43.

The Attorney General's Office is directed to obtain confirmation of Defendant Kimbrell's death in writing, and file and serve any such information on or before **DECEMBER 1, 2010**. Plaintiff shall then have until **DECEMBER 20, 2010** to either 1) attempt service of process upon Defendant Kimbrell again if he is not deceased, and notify the court of having done so; 2) to move to substitute Kimbrell's estate as a Defendant; or 3) to file a notice of voluntary dismissal of the claim against Kimbrell. **FAILURE TO TIMELY COMPLY WITH THIS ORDER WILL RESULT IN THE DISMISSAL OF THE CLAIM AGAINST DEFENDANT KIMBRELL FOR FAILURE TO PROSECUTE**.

### 3. "*Director of Corrections*"

On September 16, 2010, the court entered an Order requiring Plaintiff to decide whether he desired to substitute the Secretary of the CDCR for the previously named "Director of Corrections," and to file a Notice of Substitution and completed service

ORDER - 16

forms if he intended to do so. The court herein supplements this order by requiring Plaintiff to comply with the court's Order on or before **NOVEMBER 30, 2010.** <u>FAILURE TO TIMELY FILE A NOTICE OF SUBSTITUTION AND THE COMPLETED SERVICE FORMS FOR THE SECRETARY OF THE CDCR, MATTHEW CATE, WILL RESULT IN THE DISMISSAL OF PLAINTIFF'S CLAIMS AGAINST THE "DIRECTOR OF CORRECTIONS" WITHOUT PREJUDICE</u>.

### F. Plaintiff's Motion for Default Judgment (Ct. Rec. 35)

Plaintiff's Motion for Default Judgment (Ct. Rec. 35) against Defendants Chatham, Wisely, Montgomery, Stailey, Kimbrell, David, Wright, Felker, Robertson and Thompson is **DENIED**. The only claims asserted against Defendants Chatham, Wisely, Montgomery, Stailey, Wright, Felker, Robertson, and Thompson are herein being dismissed. Moreover, Defendants Felker, Robertson and Wright filed their Answer on August 5, 2010. Defendant David was previously dismissed by the court. Defendant Kimbrell has not been served.

## IV. CONCLUSION

**IT IS HEREBY ORDERED:**

1. For the reasons set forth in this Order, the court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss (**Ct. Rec. 32**).

    a. Defendants have met their burden of demonstrating Plaintiff failed to exhaust his administrative remedies prior to filing suit for Plaintiff's 8th Amendment excessive force, bystander liability, failure to protect, and medical indifference claims allegedly arising out of incidents on <u>November 30, 2007</u> and <u>December 8, 2007</u> alleged in the First Amended Complaint. These § 1983 claims are **DISMISSED** without prejudice as to all Defendants.

b. Defendants' Motion to Dismiss the 8th Amendment excessive force/bystander liability claims stemming from incidents allegedly occurring on April 22, 2008 and April 27, 2008 is **DENIED**.

c. Defendants' Motion to Dismiss Plaintiff's state law claims is **GRANTED**. Plaintiff's negligence, assault and battery claims asserted in the First Amended Complaint are **DISMISSED** without prejudice.

d. The claims surviving the Motion to Dismiss are: excessive force against Defendants Mitchell, Ringey, Whitlow and Kimbrell; failure to protect against Defendants Felker and the Director of Corrections; and retaliation against Defendant McGuire.

2. Plaintiff's Motion for Default Judgment (Ct. Rec. 35) is **DENIED**.

3. The parties shall abide by the following deadlines set out in this Order:

   a. November 30, 2010: Deadline for Plaintiff to file documents regarding the substitution of Secretary of CDCR as a party

   b. December 1, 2010: Deadline for Defendants to file information regarding the suggested death of Defendant Kimbrell;

   c. December 20, 2010: Deadline for Plaintiff regarding Defendant Kimbrell.

The Clerk is hereby directed to enter this Order and furnish copies to Plaintiff and counsel.

DATED this 4th day of November, 2010.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 18