1
2
3                UNITED STATES DISTRICT COURT
4               EASTERN DISTRICT OF CALIFORNIA
5   MALIK JONES,                    )     NO.    CV-09-0150-JLQ
                                    )
6            Plaintiff,             )
                                    )
7   vs.                            )     **ORDER GRANTING IN PART AND
                                    )     DENYING IN PART MOTION FOR
8   J.L. BISHOP, et al.,            )     SUMMARY JUDGMENT**
                                    )
9            Defendants.            )
                                    )
10 ─────────────────────────────── )

11
12       **BEFORE THE COURT** is the Moving[1] Defendants' Motion for Summary Judgment
13  (ECF No. 84) brought pursuant to Fed.R.Civ.P. 56.  The Plaintiff, Malik Jones, filed a timely
    response in opposition. Defendants did not reply.  For the reasons discussed below, the
14  Motion is Granted in Part and Denied in Part.
15  **I.    SUMMARY JUDGMENT STANDARD**
16       Summary judgment is proper where the pleadings, discovery and affidavits show that
17  there is "no genuine dispute as to any material fact and the movant is entitled to judgment as
18  a matter of law." Fed.R.Civ.P. 56(a). The court will grant summary judgment "against a party
19  who fails to make a showing sufficient to establish the existence of an element essential to
20  that party's case, and on which that party will bear the burden of proof at trial ... since a
21  complete failure of proof concerning an essential element of the nonmoving party's case
22  necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23
23  (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248(1986) (a fact is material
24
25       [1] Moving Defendants include all remaining Defendants including Defendants Mitchell,
26  Rigney, Whitlow, Williams, Felker, Cate, and McGuire.

ORDER - 1

1  if it might affect the outcome of the suit under governing law, and a dispute about a material

2  fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the

3  nonmoving party.") The moving party bears the initial burden of identifying those portions

4  of the record which demonstrate the absence of a genuine issue of material fact. The burden

5  then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or

6  by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific

7  facts showing that there is a genuine issue for trial.' " *Celotex*, 477 U.S. at 324 (citations

8  omitted.) The court's function on a summary judgment motion is not to make credibility

9  determinations or weigh conflicting evidence with respect to a disputed material fact. *See*

10  *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The

11  evidence must be viewed in the light most favorable to the nonmoving party, and the

12  inferences to be drawn from the facts must be viewed in a light most favorable to the

13  nonmoving party. *See id.* at 631.

14  **II.    BACKGROUND**

15          This case was originally filed on December 29, 2008 by Plaintiff, a California state

16  prisoner proceeding *pro se*, seeking relief under  42 U.S.C. § 1983.  At all relevant times,

17  Plaintiff was a prisoner at the High Desert State Prison (HDSP).  Plaintiff amended his

18  Complaint on November 6, 2009.  ECF No. 15.  After the court's screening of the Amended

19  Complaint and a decision granting in part and denying in part the Defendants' Motion to

20  Dismiss regarding exhaustion, the following claims remain:

21          1. Excessive Force/Bystander Liability against Defendants Mitchell, Rigney, Whitlow

22  and Williams;

23          2. Failure to protect against Defendants Felker and Cate; and

24          3. Retaliation against Defendant McGuire.

25          Defendants have now moved for summary judgment on these remaining claims in

26  Plaintiff's Amended Complaint.   Plaintiff opposes the Motion with exhibits and his own

ORDER - 2

declarations.   Plaintiff addresses, and largely disputes, every factual contention in the Defendant's Statement of Material Facts.   The relevant facts (including the parties' diverging versions of the facts) are set forth within the Discussion section below.

## III.   DISCUSSION

### A.   Excessive Force Claims Against Defendants Mitchell, Rigney, Whitlow and Williams
*1. Legal Standard*

Plaintiff's Eighth Amendment excessive force claims arise under the Eighth Amendment.  "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishment Clause, the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). In determining the purpose for using force, a court may evaluate the need for "application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* at 7 (internal citation omitted); *LeMaire v. Maass*, 12 F3d 1444, 1454 (9th Cir. 1993). "Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury." *Whitley v. Albers*, 475 U.S. 312, 322 (1986).

An Eighth Amendment excessive force claim requires that a plaintiff show more than a de minimis use of force and while a prisoner may believe that his rights have been violated, "[n]ot every push or shove ... violates a prisoner's constitutional rights." *Hudson*, 503 U.S. at 9-10 (internal quotation and citation omitted).   "The extent of injury suffered by an inmate is one factor which "may suggest whether the use of force could plausibly have been though

ORDER - 3

1    necessary in a particular situation" or provide "some indication of the amount of force
2    applied." *Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010).

3        Moreover, for purposes of the Prison Litigation Reform Act, recovery for mental or
4    emotional injury "requires a prior showing of physical injury that need not be significant but
5    must be more than de minimis." *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002) (holding
6    that a painful canker sore and back and leg pain are de minimis and will not support a claim
7    for mental or emotional injury under the Prisoner Litigation Reform Act).

8            *2. Excessive Force Claims Against Defendants Mitchell and Rigney*

9        On April 22, 2008, Plaintiff was at the C-yard medical clinic. Nurse Mitchell asked
10   Plaintiff to sign something. Plaintiff claims he was handed a clasp envelope with documents
11   inside and asked to see what the documents inside were before he signed for them. Mitchell
12   states that she perceived Plaintiff's behavior in refusing to sign for his medication as
13   "uncooperative," "disruptive," and "belligerent." Plaintiff denies he was being "disruptive."
14   ECF No. 84, Ex. G. Mitchell activated her personal alarm. Plaintiff contends there was no
15   need to activate the alarm and alleges Mitchell therefore maliciously did so with the intent to
16   "get Plaintiff killed or seriously injured by [responding] officers." ECF No. 99 at 2. Mitchell
17   claims she activated her alarm in a good faith to maintain and restore discipline, and not out
18   of desire to cause Plaintiff harm. Plaintiff had a prior history of repeatedly refusing
19   medication. ECF No. 84, EX. H, G.

20       Officer Rigney responded and placed Plaintiff in handcuffs. Rigney claims he acted to
21   maintain and restore discipline, not out of a desire to harm Plaintiff. Rigney denies using any
22   force against Plaintiff, other than placing him in handcuffs. Mitchell's declaration states she
23   did not witness Rigney use any force. Plaintiff claims Rigney "assaulted" him, using the
24   handcuffs as a weapon by forcing Plaintiff's left wrist and arm behind his back. ECF No. 99
25   at 2. Plaintiff contends Rigney's use of force would "inflict and cause Plaintiff chronic pain."
26   ECF No. 99 at 2. He claims the handcuffs caused bruising and scrapes on his left wrist. He

ORDER - 4

1   claims he showed these injuries to Mitchell, but she failed to provide him with medical
2   treatment or document his report of pain.  ECF No. 99, Ex. J.

3        In analyzing the *Whitley* factors described above and the need for application of force,
4   it is undisputed this incident evolved from Plaintiff's failure to comply with the order of Nurse
5   Mitchell.  Plaintiff admits he did not sign the envelope as requested by Nurse Mitchell.
6   Plaintiff admits he questioned her.  Nurse Mitchell was aware that Plaintiff had a history of
7   being uncooperative.  Though Plaintiff denies this history, there are numerous examples
8   documented throughout the several hundred-page summary judgment record of Plaintiff's
9   non-cooperative attitude regarding medical treatment and advice and disruptive behavior as
10  an inmate. See e.g., ECF No. 84, Ex. E at 15 ("Jones refused to cooperate or participate in the
11  [BMU] program and his conduct remained disruptive and unacceptable); Ex C at
12  12(Inmate...very uncooperative...purposely avoiding being helpful); Ex. A at 52 (patient
13  refuses to go to MRI...Podiatry and EMG).

14       As for the amount of force used, there is no evidence that Nurse Mitchell used any
15  force. Officer Rigney placed Plaintiff in handcuffs which as Plaintiff describes, was by forcing
16  Plaintiff's left wrist and arm behind his back.  Plaintiff claims to have received bruising and
17  scrapes on his wrist.

18       The evidence on this claim, viewed in the light most favorable to Plaintiff, does not
19  support a reliable inference of wantonness in the infliction of pain on the part of Defendants
20  Mitchell or Rigney.

21      *3.  Excessive Force Claims Against Defendant Whitlow and Williams*

22       Plaintiff claims that on April 27, 2008, he informed Defendant Whitlow he needed a
23  vegetarian lunch, to which Whitlow responded hostilely that Plaintiff would get his lunch last.
24  Plaintiff claims that thirty minutes later, Defendant Williams delivered his food tray to
25  Plaintiff's cell with only teaspoon portions.  Believing his food was tampered with, Plaintiff
26  wanted to show the tray to a sergeant. When the Defendants came to pick up the tray, Plaintiff

ORDER - 5

refused.  Defendant Whitlow admits "an altercation took place" where Officer Williams and Whitlow took control of the food tray.   Defendant Whitlow admits that during the "altercation," Plaintiff fell out of his wheelchair. Plaintiff claims Williams grabbed his left hand and the food tray, yet Plaintiff admits he "managed to break free from Defendant Williams violent grip."   ECF No. 99 at 4. This is consistent with Defendant Whitlow's contention that Plaintiff resisted the officers as Williams attempted to gain control of the tray.

Plaintiff claims that even after they had the food tray, Whitlow continued to assault him by repeatedly kicking his ankles/shins/legs, causing him to fall out of the wheelchair.  He claims Whitlow and Williams left him on the ground "screaming and moaning in pain." ECF No. 99, Ex. J. Plaintiff claims this incident aggravated his "spasms" and pain. Plaintiff claims to suffer chronic spasms in his back, lower extremities, and right arm, stemming from injuries he sustained in incidents in 2006 and 2007.   ECF No. 84, Ex. A at 4, 13.

Notably, Defendant Williams' version of this encounter differs.  He does not refer to any altercation having taken place.  He indicates that when Plaintiff refused to provide the tray, he opened the cell door, then  "reached down and retrieved Plaintiff's food tray with only minimal resistance." ECF No. 102 at 2.  He then claims the cell door was closed "and we continued with our duties." ECF No. 102 at 2. He denies there being any use of force during the encounter and denies seeing Plaintiff fall out his wheelchair.  *Id.*

Plaintiff claims as a result of this incident he suffered "physical, psychological and emotional injury" and supports this statement with his own declaration. ECF No. 99, ex. J. Though Plaintiff used the inmate health care system, nowhere in all of Plaintiff's health care services requests for the year 2008, is there any mention of an injury resulting from either incidents in April 2008.  Plaintiff's progress notes, physician's order, and encounter forms likewise fail to mention any injury stemming from these incidents.  There is only one medical record, dated November 20, 2008, where Plaintiff requested a sports cream to treat his upper body spasms and pain, indicating  "I have been in several incident[s] that have aggravated the

1   problems more." ECF No. 84, Ex. A at 39. Plaintiff claims the reason for the lack of medical

2   evidence is because prison medical staff disregarded and do not accurately document prisoner

3   statements in an effort to protect prison officials. ECF No. 99, Ex. K.

4          Analyzing the *Whitley* factors here, including the need for application of force, it is

5   undisputed that this incident *also* evolved from Plaintiff's failure to comply with the

6   Defendants' orders. Plaintiff admits he did not return his food tray when asked to because he

7   believed he was being unfairly treated and he wanted to show it to a sergeant. When

8   Defendant Williams grasped at Plaintiff to forcibly get the tray, Plaintiff admits he resisted and

9   "brok[] free" from his grip. Defendants were aware that in 2007 Plaintiff had participated in

10  a hunger strike where for days he refused to accept food trays. *See e.g.*, ECF No. 84, Ex. C

11  at 8.

12         As to the amount of force used during this incident, according to Plaintiff, Defendant

13  Williams grabbed Plaintiff's left hand (and the food tray) and then Defendant Whitlow bent

14  his fingers back and "repeatedly kick[ed] his ankles/shins/legs" causing him to fall out of his

15  wheelchair. Plaintiff claims this incident aggravated spasms he suffers and caused pain.

16  Though Defendants have provided evidence that Plaintiff frequently sought prison medical

17  care for a variety of ailments, there is no *specific* mention of any injury stemming from these

18  April incidents.

19         Viewing the evidence in the light most favorable to Plaintiff, the record does not

20  support a reliable inference of wantonness in the infliction of pain on the part of Defendant

21  Williams. However, there is a genuine issue of material fact as to whether Defendant

22  Whitlow's use of force-namely, his alleged kicking of Plaintiff-was excessive. According to

23  Plaintiff, after Defendant Williams had obtained the food tray, Whitlow proceeded to kick him

24  repeatedly in the ankles/shins/legs, causing him to fall out of the wheelchair. Defendant

25  Williams claims there was "minimal resistance" involved in the encounter to obtain the food

26  tray. Yet, Defendant Whitlow admits an "altercation" took place, but does not describe the

ORDER - 7

nature of the altercation or the nature of his involvement.  Defendant Whitlow did not reply to Plaintiff's opposition to the Motion.  Though Defendants focus on the fact there is no evidence of significant injuries caused by the alleged kicking, a significant injury is not a threshold for stating an excessive force claim. *Hudson*, 503 U.S. at 7.  The court agrees that there is no evidentiary support that the injury sustained from the kicking - an increase in pain caused by old injuries-- was more than de minimis. *See e.g., Oliver v. Keller*, 289 F.3d 623, 627-29 (9th Cir. 2002) (holding that back and leg pain caused by sitting on cement floor, undefined injuries from being assaulted by another prisoner and a painful canker sore were de minimis injuries).  The de minimis physical injury involved in this case prevents Plaintiff from seeking damages based upon a mental and emotional injury . *See Wilkins v. Gaddy*, 130 S.Ct. 1175, 1180 (2010)(per curiam).  It does not, however, defeat the Plaintiff's Eighth Amendment assault claim seeking compensatory, nominal, or punitive damages.  If an inmate is gratuitously beaten and kicked by a guard he does not lose his ability to pursue an excessive force claim merely because he escapes without serious injury or is precluded from seeking damages for alleged mental or emotional distress arising therefrom. *Wilkins*, 130 S.Ct. at 1178-79 (2010) (per curiam).

Therefore, viewing the facts in the light most favorable to the Plaintiff, there are genuine issues of material fact as to whether the food tray was seized with "minimal resistence" and then Defendant Whitlow continued to repeatedly kick Plaintiff causing him to fall out of his wheelchair. Accordingly, Defendants' Motion for Summary Judgment as to Defendant Whitlow is **DENIED**. The Motion For Summary Judgment of Defendant Williams on this claim is **GRANTED.**

**B.      Failure To Protect Claims Against Felker and Cate.**

Plaintiff claims that Defendants Felker (Warden of HDSP) and Cate (Secretary of the California Department of Corrections) violated his Eighth Amendment rights by failing to transfer him out of HDSP to protect him from ongoing retaliation at the prison.  ECF No. 15

ORDER - 8

1  at 13. Plaintiff alleges his family and friends "constantly informed" Felker by letter and phone
2  call of retaliation and reprisals "of all forms causing his life and safety to be in sever[e] danger
3  from prison population..."  ECF No. 99 at 10.

4        Having arrived at HDSP on July 7, 2006, Plaintiff's classification was regularly (17
5  times) reviewed by a classification committee.  ECF No. 84, Ex. E.  Defendant Felker
6  participated in two of these reviews on May 15, 2008 and September 4, 2008. Id. at 15, 17.
7  Defendant Cate did not participate in any of these reviews.

8        The court notes it is established that prisoners have no constitutional right to
9  incarceration in a particular institution. *See Olim v. Wakinekona*, 461 U.S. 238, 244–48
10  (1983); *Meachum v. Fano*, 427 U.S. 215, 224 (1976). A prison official may be held liable
11  under the Eighth Amendment "only if he knows that inmates face a substantial risk of serious
12  harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v.*
13  *Brennan*, 511 U.S. 825, 847 (1994). The test is not whether an official knew or should have
14  known of a substantial risk of serious harm, but whether he did, in fact, know of it and
15  consciously disregarded that risk. "[T]he official must be both aware of facts from which the
16  inference could be drawn that a possibility of harm exists, and he must also draw the
17  inference. *Id*. at 837. Further, the Eighth Amendment is not violated by the negligent failure
18  to protect inmates from violence. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

19        The court has reviewed Plaintiff's opposition concerning the requested dismissal of
20  Plaintiff's failure to protect claims against Defendants Felker and Cate, and considered
21  Plaintiff's declaration at Ex. N and the attachments in Ex. O, in regards to this claim. ECF No.
22  99. Plaintiff has not set forth any facts from which an inference could be drawn that a
23  substantial risk of harm known to them existed.  Plaintiff's classification was routinely
24  reviewed by committees.  Other than Plaintiff's blanket assertion there was ongoing
25  retaliation, there are no facts from which it might be inferred that he was subject to a
26  substantial risk of serious harm by being housed at HDSP. Plaintiff indicates in his

ORDER - 9

Memorandum that his family wrote letters and made phone calls, but he does not provide a copy of these communications, provide a declaration as to these communications, or even describe what specific threat the communications were about. Plaintiff has likewise failed to allege any specific facts that Defendant Cate knew of a specific risk of harm to Plaintiff and consciously disregarded it. Accordingly, Defendants Felker and Cate are entitled to summary judgment on Plaintiff's claim for failure to protect.

## C.    Retaliation Claim Against Defendant McGuire

Defendants also move for summary judgment on Plaintiff's claim of retaliation against Defendant McGuire. Plaintiff's First Amended Complaint alleges that Defendant McGuire, in retaliation for his litigation, "deprived him of his needed legal property and documents for his active court cases" and then "she wantonly destroyed them." ECF No. 15. On August 7, 2007, Plaintiff was placed in the HDSP Behavior Modification Unit (BMU) (ECF No. 84, Ex. E at 15) which "restricts inmate privileges as a means to compel the inmate to comply with institutional rules and regulations." ECF No. 84, Ex. F at 52. Plaintiff was issued all allowable property for that Unit. Because he failed to sign the trust account withdrawal so his disallowed property could be mailed to a third party (ECF No. 84, Ex. F), Defendant McGuire, pursuant to California Code of Reg., Title 15, § 3191(c), forwarded his disallowed property to Receiving and Release for a determination of disposition. Only excess legal materials are placed into storage. According to Defendant McGuire, there were no legal materials in this property.  ECF No. 99, Ex Q at 50.

While in BMU, Plaintiff filed an inmate appeal, HDSP Appeal Log # D-08-00172, requesting access to his legal materials.   This appeal was granted at the first level of review, as all of Plaintiff's property, retained while Plaintiff was in BMU, was issued to him upon his release from the BMU.  Plaintiff then re-filed the appeal to the second level complaining that all of his personal property was not returned. Again, that appeal was partially granted because

ORDER - 10

1  he was issued his allowable personal property retained by the prison, including his legal
2  materials.  ECF NO. 84, Ex. F.

3      "Within the prison context, a viable claim of First Amendment retaliation entails five
4  basic elements: (1) An assertion that a state actor took some adverse action against an inmate
5  (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the
6  inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance
7  a legitimate correctional goal ." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir.2005).
8  Adverse action is action that "would chill a person of ordinary firmness" from engaging in that
9  activity. *Pinard v. Clatskanie School Dist*., 467 F.3d 755, 770 (9th Cir. 2006).  Both litigation
10  in court and filing inmate grievances are protected activities.

11      Plaintiff asserts in response to the Summary Judgment Motion that even if he was given
12  his "allowed 1-cubic foot of legal property" while in BMU,  there remained three (3) missing
13  boxes of "property full of Pl[aintiff's] legal work and documents." ECF No. 99 at 14.  At the
14  same time, Plaintiff asserts he did not know how many items or which items were sent for
15  disposition because Defendant McGuire sorted his property outside his presence.  Because the
16  prison confirmed this alleged legal property did not exist in storage, Plaintiff asserts Defendant
17  McGuire must be held responsible for having confiscated and destroyed it.

18      Plaintiff's retaliation claim against Defendant McGuire fails on multiple grounds.  The
19  record is entirely devoid of any facts or allegations which would support a retaliatory motive
20  on Defendant McGuire's part, causation (that McGuire acted because of protected conduct),
21  or that the action taken  chilled Plaintiff's First Amendment Rights.  Plaintiff claims the
22  missing legal material was for "active court cases along with civil actions [he] plan[ned] to
23  file," but there is no indication of any impact on either.  Plaintiff speculates McGuire must
24  have known about the legal materials because she frequently delivered legal mail to inmates.
25  Though Plaintiff claims in his summary judgment materials that he was missing three *boxes*
26  of legal material, notably, Plaintiff never asserted in any of his administrative inmate appeals

ORDER - 11

1  that this volume of materials was missing.  Defendant McGuire attests there were no legal

2  materials amidst the disallowed personal property she sent for disposition pursuant to BMU

3  policy.  Indeed, there is not even a scintilla of evidence, other than Plaintiff's surmise, that

4  Defendant McGuire "destroyed" his property.  A non-moving party may not defeat summary

5  judgment by relying upon unsupported conjecture, surmise, or conclusory statement. As

6  Plaintiff has failed to make a showing sufficient to infer he could prove the essential elements

7  of his retaliation claim, Defendant McGuire is entitled to summary judgment.

8  **IV.    CONCLUSION**

9          **IT IS HEREBY ORDERED:** Defendant's Motion for Summary Judgment

10  (ECF No. 84) is **GRANTED IN PART** and **DENIED IN PART**.  It is granted as to

11  Defendants Mitchell, Rigney, Williams, Felker, Cate and McGuire.

12          The Motion For Summary Judgment is denied as to the excessive force claim against

13  Defendant Whitlow.

14          The court will issue a separate Scheduling Order setting the remaining pretrial deadlines

15  and for trial.

16          The Clerk is hereby directed to enter this Order and furnish copies to Plaintiff and

17  counsel.

18          DATED this 19th day of April, 2012.

19                          s/ Justin L. Quackenbush
                        JUSTIN L. QUACKENBUSH
20              SENIOR UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

ORDER - 12